UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LORRE A. McIVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-00773-SEB-DML |
| | ) |
| NANCY A. BERRYHILL,[1] Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Lorre A. McIver is not disabled.

### Introduction

Ms. McIver applied in June 2012 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging she has been disabled since March 1, 2011. For purposes of the DIB program, Ms. McIver's date last insured is

---

[1]    Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. As provided by Fed. R. Civ. P. 25(d), she is substituted for Carolyn W. Colvin as the defendant.

December 31, 2014. Acting for the Commissioner of the Social Security Administration following a hearing held November 3, 2014, administrative law judge Daniel T. Mages issued a decision on November 21, 2014, that Ms. McIver was not disabled at any time between her alleged onset date and the date of his decision. The Appeals Council denied review of the ALJ's decision on February 4, 2016, rendering the ALJ's decision for the Commissioner final. Ms. McIver timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. McIver was represented by counsel at the administrative hearing, but is proceeding *pro se* on her complaint for judicial review of the Commissioner's decision that she was not disabled.

Ms. McIver contends the Commissioner's decision must be reversed and remanded because the ALJ (1) did not adequately develop the administrative record; (2) should have obtained additional medical expert testimony; (3) did not properly account in the RFC for her pain symptoms; (4) did not adequately explain his rejection of certain findings by the consultative physical examining physician; and (5) did not properly apply the "grids" in his step five evaluation. In addition, she asks the court to consider new evidence, which is a request for remand under sentence six of 42 U.S.C. § 405(g), which permits a court to remand for the Agency to consider additional evidence that is "new," "material," and for which there is a good reason the evidence had not been submitted to the ALJ.

The court first describes the legal framework for analyzing disability claims and the court's standard of review and then addresses Ms. McIver's assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Ms. McIver is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the

Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Ms. McIver was born in 1962, was 48 years old as of her alleged disability onset date in March 2011, and was 52 years old as of the issuance of the ALJ's decision. Because Ms. McIver applied for benefits only under the Title II DIB program and her date last insured is December 31, 2014, she is entitled to benefits only if she became disabled on or before December 31, 2014. *Shideler v. Astrue,* 688

5

F.3d 306, 311 (7th Cir. 2012) (claimant must establish that disabled before expiration of her insured status). The ALJ's decision was issued on November 21, 2014, before the expiration of Ms. McIver's insured status. Thus, her date last insured is not material to the court's analysis, except in connection with Ms. McIver's assertion that new evidence—which postdates her date last insured—should be considered.

Ms. McIver worked full-time for about 13 years, from April 1991 to December 2004, on an assembly line at an automobile plant. While working at the plant, she had medical insurance. She testified that she lacked medical insurance in later years, which limited the extent of her medical treatment. The medical evidence corroborates her lack of insurance; some records from 2007 and 2008 denote "no ins." *See* R. 303, 304, 306. She later worked part-time jobs for two different employers—in the housewares department at a K-mart store and as a telephone solicitor conducting surveys. (R. 166). Ms. McIver last worked in May 2010, and thus has not engaged in substantial gainful activity since her alleged onset date in March 2011.

At step two, the ALJ found Ms. McIver suffers from several severe impairments: degenerative disc disease, scoliosis, chronic pain syndrome, hypertension, headaches, obesity, depression, and anxiety. At step three, he found no listing was met or medically equaled. For purposes of steps four and five, the ALJ determined Ms. McIver's impairments restrict her to a range of light work. He found she can sit for four hours and stand or walk for six hours during an eight-

hour work day, and can lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently. He limited certain postural activities to only occasionally—climbing, balancing, stooping, kneeling, crouching, and crawling. Finally, to accommodate Ms. McIver's reports of headaches and mental impairments, he limited her to simple, routine tasks, but with the ability to attend, concentrate, and persist for two hours at a time. (R. 18).

Based on the testimony of a vocational expert, Ms. McIver's past relevant work (the automobile assembly line job) was found incompatible with her RFC because her ability to sit was limited to four hours. Had she been able to perform the full range of light work, which includes the ability to sit six hours in an eight-hour work day (as well as stand and walk for six hours), her past work would have been compatible with the RFC. (R. 21 (adoption of VE's testimony); R. 53-54 (VE's testimony)).

With the RFC and Ms. McIver's vocational factors, and based on the opinion of the vocational expert, the ALJ determined Ms. McIver could perform three types of unskilled jobs existing in significant numbers in Indiana and in the national economy: small parts assembler (DOT #706.684-022), electronics worker (DOT #726.687-010), and laundry folder (DOT #369.687-018). Accordingly, the ALJ decided at step five that Ms. McIver was not disabled at any time from her alleged onset date to the date of the ALJ's decision in November 2014.

## II. Ms. McIver's Assertions of Error

As noted above, Ms. McIver raises numerous alleged errors in the ALJ's decision. Several are related to whether the administrative record was sufficiently complete to allow a reasoned decision about whether Ms. McIver was disabled. The court will address those errors first. The court will then address Ms. McIver's specific challenges to the RFC determination, including the ALJ's failure to credit her testimony regarding the effect of her impairments and pain on her abilities and the ALJ's rejection of the opinion of the consultative examining doctor regarding her functional capacity. Finally, the court will address Ms. McIver's complaint about the ALJ's use of the grids at step five, and her submission of new evidence.

### A. An ALJ has an obligation to ensure the administrative record is sufficiently complete to render a decision about disability.

Ms. McIver contends that the ALJ did not develop a full and fair administrative record on which to base a decision about her disability. She states that the record does not contain medical evidence from several doctors who have treated her in the past for chronic back pain, ankle and shoulder pain, anxiety, and depression. (Dkt. 18 at p. 6). She asserts that the ALJ should have advised her if the medical evidence was insufficient to establish disability so that she could have tried to obtain more detailed reports. Ms. McIver also asserts the record was incomplete because the ALJ should have consulted a medical expert at the administrative hearing.

An ALJ does have a duty to develop a full and fair record, *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000), but the claimant also has a responsibility to furnish

medical and other evidence that the Social Security Administration can use to determine disability. The same regulation, 20 C.F.R. § 404.1512, which addresses the SSA's duty to develop a complete medical history (at subsection 404.1512(d)) also addresses a claimant's duty to provide the SSA with all evidence she believes shows she is disabled (at subsections 404.1512(a), (b)).[2] Generally, the SSA will develop a medical history covering at least the 12 months preceding the month in which the application is filed. 20 C.F.R. § 404.1512(d)(2).

Ms. McIver initially was not represented by counsel, but consulted with a lawyer—who accepted the representation—about a month before the scheduled administrative hearing. Except for counsel's request that the ALJ ask a medical expert to give an opinion at step three and about Ms. McIver's functional capacity, he did not suggest at or after the hearing that the record was not sufficiently developed to allow the ALJ to make a reasoned decision about Ms. McIver's disability. *See Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993) (ALJ has discretion to decide if the record is sufficiently complete; all possibilities do not have to be exhausted, and the court owes respect to the agency's judgment about how much evidence is enough").

Before the hearing, Ms. McIver's counsel (who, as noted, had first been contacted by Ms. McIver only about a month before the first scheduled hearing)

---

[2] The claimant's duty to supply evidence is emphasized in other regulations as well. *See* 20 C.F.R. § 404.1514 ("You are responsible for providing" "specific medical evidence to determine whether you are disabled. . . ."); 20 C.F.R. § 404.1515 ("You may give us evidence about your impairment at any of our offices. . . .")

9

reviewed the administrative record and wrote a letter to the ALJ about gaps in the administrative record. He noted that it did not contain medical records after September 2012, and requested that the hearing be postponed to permit him to order the later medical records. He also asked the ALJ to order x-rays of Ms. McIver's spine because there was nothing in the file more recent than 2009 (thoracic spine x-ray) and 2004 (lumbar and cervical spine x-ray). (R. 248-49). The ALJ granted these requests. The hearing was continued from June 26, 2014, to November 3, 2014; Ms. McIver underwent an MRI of the lumbar spine on August 19, 2014 (R. 419-20), and counsel submitted medical records for 2013 and 2014. (*See* R. 389-432 for these additional records).

A claimant who is represented by counsel is expected to put on her best case for benefits. *Glenn v. Sec'y of Health & Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987) (ALJ is entitled to assume that a claimant who is represented by counsel "is making his strongest case for benefits"). It is clear that Ms. McIver's counsel acted to ensure the completeness of the administrative record. Ms. McIver cannot complain now about alleged gaps in the medical evidence when she never before suggested the record was incomplete.

But there was one request made by Ms. McIver's counsel that was rejected by the ALJ. He requested the ALJ to obtain the opinion of a medical expert about whether Ms. McIver's spinal disorders medically equal a Listing and for fashioning an appropriate RFC. Counsel emphasized that no medical expert had reviewed the 2014 lumbar spine MRI, and the previous MRI of the lumbar spine (which was

reviewed) had occurred in 2004. The ALJ's decision explains his rejection of the need for a medical opinion whether Ms. McIver's spinal disorders medically equaled a listing, but the ALJ did not address why he determined that an expert review of new medical evidence was not appropriate for purposes of deciding an appropriate RFC.

In his analysis whether Ms. McIver's physical impairments met or medically equaled a listing, the ALJ stated that his finding that no listing was met or equaled is "consistent with the opinions of the reviewing physicians . . . with Disability Determination Services." (R. 15). However, there is *no* opinion in the administrative record of any physician about whether Ms. McIver's physical impairments met or medically equaled a listing.[3] The absence of such a medical opinion in the administrative record requires remand, as explained by the Seventh Circuit in *Barnett v. Barnhart,* 381 F.3d 664 (7th Cir. 2004):

> Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue. *See* 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings. . . . We will also consider the medical opinion given by one or more medical . . . consultants designated by the Commissioner in deciding medical equivalence."); S.S.R. 96-6p at 3 ("[L]ongstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), *reinstating* S.S.R. 83-19; *see Farrell v. Sullivan,*

---

[3] There is a medical opinion about whether Ms. McIver's mental impairments meet or medically equal a listing (R. 337-349), and that opinion—that no listing was met or equaled—was affirmed by a second reviewing psychologist. (R. 370). Ms. McIver has not shown that any medical evidence added to the record subsequent to these psychologists' rendering of their opinions about the severity of her mental impairments undermine those opinions in any material way.

11

> 878 F.2d 985, 990 (7th Cir. 1989) (concluding that ALJ complied with requirement of Social Security Ruling 83-19 that he consider a consulting physician's opinion regarding medical equivalency). Here, the ALJ did not consult an expert regarding medical equivalence—neither [doctor] opined on the issue. Nor can we locate [an SSA form] that would otherwise satisfy the ALJ's duty to consider an expert's opinion on medical equivalence.

*Id.* at 670-71.

Although the ALJ made his own analysis whether Ms. McIver's spinal disorders (degenerative disc disease, scoliosis, and chronic pain) met or medically equaled a listing at step three by addressing the requirements of Listing 1.04 (relating to disorders of the spine), his analysis did not have the benefit of any expert opinion. Had there been an expert opinion about medical equivalence based on at least some of the medical evidence (significant new medical evidence was added to the record after state agency reviewers opined on an appropriate RFC at the initial and reconsideration levels of review), it may have been appropriate for the ALJ to determine that an *updated* expert medical opinion about equivalence was unnecessary because new evidence not previously reviewed by a doctor was unlikely to cause a change in the initial expert opinion. *See* SSR 96-6p (requiring ALJ to obtain additional expert medical testimony only when, "in the opinion of the administrative law judge," new evidence might cause the initial opinion to change). But here, the ALJ did not have any expert opinion to use as his base for allowing some comparison between the state of the evidence at the time of that opinion and the new medical evidence so that a reasoned evaluation whether a equivalence opinion might change could be made.

The ALJ's step three decision is not supported by substantial evidence because there is no expert medical opinion in the administrative record about whether Ms. McIver's disorders of the spine[4] medically equaled a listing.

**B. The ALJ's RFC is not supported by substantial evidence.**

The state agency reviewing doctor rendered his opinion about an appropriate physical RFC on August 16, 2012. (R. 364). This RFC opinion was "affirmed as written" by another reviewing doctor on December 4, 2012. (R. 369). The ALJ's RFC essentially adopts the physical RFC supplied by the state agency reviewers. They determined that Ms. McIver could sit *less* than 6 hours but could stand and/or walk at least 6 hours in an 8-hour workday and that she could lift/carry/push/pull 10 pounds frequently and 20 pounds occasionally. They also found she can only occasionally climb, balance, stoop, kneel, crouch, and crawl. (R. 357-364). The ALJ made the same determinations, except that he quantified how much less than 6 hours Ms. McIver can sit, and determined she can sit 4 hours in an 8-hour workday.

In reaching his RFC, the ALJ rejected an opinion by an agency physician who actually examined Ms. McIver—and the only doctor who both examined her and offered an opinion about an appropriate RFC. The ALJ also found that Ms.

---

[4] There is substantial evidence that Ms. McIver suffers from spine disorders. X-rays or MRIs of the cervical, thoracic, and/or lumbar spines took place in May 2004, October 2009, May 2014, and August 2014. Disc herniation, bulging discs, disc degeneration, discs impressing on the thecal sac, large and small bone spurs, osteoarthritis, endplate changes, severe disc space narrowing, slippage of a vertebra, and scoliosis are all noted among these tests.

13

McIver's statements about the ways in which her physical impairments affect her functioning were not credible "as to prevent her from working at the level I have assessed." (R. 20). As addressed below, the court finds that the ALJ's rejection of the opinion of the examining doctor about Ms. McIver's functioning is not supported by substantial evidence, and that the ALJ's credibility determination is patently erroneous.

The examining physician (Dr. Jacobs) provided a "medical source statement," giving his opinion about Ms. McIver's functioning. He found that her sitting, standing, and walking abilities are limited—45-60 minutes at a time for sitting; 15-30 minutes at a time for standing; and up to 300 feet at a time for walking. (R. 354). He also found that her push/pull/lift/carry abilities were limited to 0-10 pounds. (*Id.*). These conclusions followed from a physical examination. With respect to Ms. McIver's musculoskeletal system, he found she was "positive" for arthritis, back pain, limited range of motion,[5] joint pain, and muscle pain. (R. 352). He found that her gait, speed, and station were normal, she was able to get on and off the examining table without assistance, she was able to walk on heels and toes, was not able to tandem walk or squat, and had an abnormal straight leg raise. (R. 353). The "straight-leg test" evaluates low back pain, and if the test is "abnormal," then "one or more nerve roots leading to [the] sciatic nerve may be compressed or

---

[5] Ms. McIver's range of motion was below normal in all movement modalities of the cervical and lumbar spines, for forward elevation of the shoulders (especially on the right), for flexion at the elbows (especially on the right), and for flexion at the knees and hips. (R. 355).

14

irritated."[6]  *See http://www.webmd.com/a-to-z-guides/tc/straight-leg-test-for-evaluating-low-back-pain-topic-overview.*  Dr. Jacobs found that Ms. McIver's back pain is secondary to disc disease, which probably will not improve over time.  (R. 353).

The ALJ rejected Dr. Jacobs's opinion about Ms. McIver's functional capacity on the ground that the restrictions were not supported by (a) the physical findings on examination, (b) Ms. McIver's "infrequent treatment," and (c) a lack of "significant musculoskeletal or neurological deficits."  (R. 21).  The court does not follow this reasoning.  There are numerous physical findings about Ms. McIver's significant spine problems and lack of range of motion that appear (at least to a layman) to support limited mobility; the MRI and other imaging of Ms. McIver's cervical, thoracic, and lumbar spine demonstrate chronic and worsening degenerative disc disease and substantial curvature of the spine.  Moreover, Ms. McIver's "infrequent" treatment can be traced to her lack of medical insurance, as

---

[6]     This appears to be consistent with x-rays or MRIs of Ms. McIver's spine.  The MRI of the lumbar spine conducted in August 2014 revealed that Ms. McIver has degenerative disc disease throughout the lumbar spine with severe disc space narrowing, "discogenic endplate marrow changes at L2-L3 and L3-L4," and "mild to moderate facet arthrosis at the L3-L4 through L5-S1 levels."  (R. 419-20).  All of these conditions are associated with back pain.  In addition, Ms. McIver has "moderate" levoscoliosis of the lumbar spine, meaning that her spine curves to the left in the lumbar area (low back).  An x-ray conducted in 2009 revealed that she has "approximately 26 degrees of dextroscoliosis of the thoracic spine," meaning that her spine curves to the right at the thoracic spine (mid-back).  Moderate stage scoliosis (which includes a scoliosis curve at 26 degrees to 40 degrees) commonly causes pain in the spine, including between the shoulder blades (a complaint Ms. McIver made at examinations).  *See* http://www.southfloridascoliosiscenter.com/wisfeed.html::.

15

Ms. McIver testified at the hearing and as is reflected in her medical records. She has been treated with pain medication for years to treat her back pain and disc disease, and some records even denote "no ins[urance]." Ms. McIver testified that when she worked at the automobile plant, she had insurance and underwent more intensive treatment for her back problems then because of insurance. It is irrational for an ALJ to discount the intensity of a claimant's medical problems because of the lack of treatment when the claimant was not able to afford more intensive treatment. *See Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir. 2008) (though infrequent treatment can support an adverse credibility finding if the claimant does not have a good reason for the infrequency of treatment, ALJ cannot draw inferences about the claimant's conditions "from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care").

    The ALJ's rejection of the opinion of the examining physician in favor of the opinion of the reviewing physician simply is not supported by substantial evidence in the record. *See Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) (a contradictory opinion of a non-examining physician is not, by itself, a sufficient reason to accept that opinion over the opinion of an examining physician; there must be sound reasons supported by the evidence).

    This brings the court to the ALJ's credibility evaluation in the context of deciding an appropriate RFC. While an ALJ's credibility determination is reviewed deferentially and will not be set aside unless it is "patently wrong," there are numerous errors in this ALJ's analysis. The court finds it patently wrong. *See*

*Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008) (court's role in reviewing credibility finding is limited to examining "whether the ALJ's determination was 'reasoned and supported,'" and it may not overturn the ALJ's finding unless it is "patently wrong.") First, as noted above, the ALJ unfairly doubted the intensity of Ms. McIver's symptoms from her back problems because of lack of treatment when the infrequency of her treatment can be directly attributed to her lack of insurance, an issue the ALJ failed to address. *Craft v. Astrue,* 539 F.3d at 679.

Second, the ALJ may have mischaracterized the severity of Ms. McIver's disorders of the spine, and thus unfairly concluded that her testimony about the debilitating effects of those disorders are inconsistent with the medical evidence. The ALJ described Ms. McIver's degenerative disc disease with scoliosis as "generally mild," and permitting her to stand and walk up to 6 hours in a work day because she does not have "nerve root impairment." While the agency reviewing doctors (who do not appear to specialize in back disorders) also opined that Ms. McIver could stand and walk up to 6 hours in a work day, they did not review Ms. McIver's medical records from treatment in 2013 and 2014, and did not review radiology reports of the cervical spine and lumbar spine from May 2014 and September 2014. These records indicate that Ms. McIver's back problems have persisted for years and her degenerative disc disease has progressively worsened. The ALJ inappropriately "played doctor" here by interpreting this significant new medical evidence on his own, and then drawing a negative inference about Ms. McIver's credibility based on medical evidence he very well may not have properly

interpreted. *See Stage v. Colvin,* 812 F.3d 1121, 1125 (7th Cir. 2016) (internal quotation omitted) (ALJ should not have evaluated new MRI on his own and decided it was "similar" to existing evidence; "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.")[7]

Third, the ALJ unfairly, and improperly, equated Ms. McIver's abilities to perform certain daily living activities with an ability to work 8 hours a day, 5 days a week, in a job requiring her to stand or walk at least 6 hours of the day. The ALJ stated that Ms. McIver's activities of daily living "are consistent with the residual functional capacity I have assessed." (R. 20). Those activities, which he addressed in the context of deciding whether and how Ms. McIver's mental impairments affect her daily living activities, were that Ms. McIver lives alone, spends time watching television and reading, prepares simple meals, performs light housework, does laundry, and can wash dishes. (R. 16). The ALJ did not address Ms. McIver's testimony about how she conducts these activities and the difficulties she has in sitting too long, standing too long, and walking, preparing her meals, doing *some* (but not all) housework tasks, and rarely doing laundry. The Seventh Circuit has

---

[7] The ALJ also unfairly characterized the record evidence about Ms. McIver's complaints about pain. He wrote that the "record is devoid of any contemporaneous documentation of her allegations of disabling physical pain and functional limitations." (R. 19). Ms. McIver complained about back pain throughout the medical evidence. Indeed, her "chief complaint" at many office visits included "chronic pain." While functional limitations were not specifically addressed, Ms. McIver either was not working at the time she was being seen by doctors or was working only part-time.

often criticized the penchant of administrative law judges in Social Security disability cases to equate a claimant's ability to keep her life and household from falling to pieces with the ability to work a full-time job. That criticism is apt here and also undermines the ALJ's negative credibility finding. In *Bjornson v. Astrue,* 671 F.3d 640 (7th Cir. 2012), the court wrote:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, . . . and is not held to a minimum standard of performance as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Id.* at 647.

The above examples are serious errors in the ALJ's credibility analysis, for which remand is required.

**C. Other alleged errors can be addressed on remand.**

As discussed above, reversal and remand is required because the step three finding and RFC determination are not supported by substantial evidence. The court therefore need not address Ms. McIver's contention that the ALJ did not properly apply the "grids" at step five.[8] With respect to the new medical evidence Ms. McIver submitted to the court, she may submit that evidence on remand. The evidence is dated after her date last insured; therefore, its evidentiary worth

---

[8] Her contention is not correct anyway. The ALJ found that the grids could be used only as a guideline in deciding disability at step five because he had determined that Ms. McIver could perform only a *modified* range of light work. His step five decision was based on the testimony of a vocational expert instead of the grids. There was no "grids" error.

19

depends on the extent to which it sheds light on Ms. McIver's medical condition before her date last insured.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND, under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision that Ms. McIver is not disabled.

**Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. The parties should not anticipate any extension of this deadline or any other related briefing deadlines.**

IT IS SO RECOMMENDED.

Dated: August 3, 2017

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record by email through the court's ECF system

Via United States mail:

LORRE A. McIVER
212 Hickory Drive
Connersville, IN 47331